## Tuttle, Adm'r, Appellant, v. Robinson, Appellee.

It is the general practice in this State for auditors to receive the testimony of either party to a suit, and the court will not interfere with a report because one of the parties has testified, unless it is manifest that injustice has been done.

A witness is properly allowed to refresh his memory, by recurring to a memorandum made by himself at the time of the occurrences to which it relates, and which he knows to have been correctly made. The memorandum itself is admissible in evidence, in connection with the testimony of the witness in relation to it.

Where, by the charter of an insurance company, the issuing a policy creates a lien upon the property insured, it is the duty of the administrator of the assured to remove the lien, by paying the assessments for losses, if there are sufficient assets for that purpose — such lien constituting a legal incumbrance upon the estate.

The presentation to a commissioner on an estate, administered in the insolvent course, of a claim, secured by mortgage, pledge or lien of greater value than the claim itself, and its rejection by such commissioner, and no appeal taken, only bar the right of such claim to any portion of the general funds in the hands of the administrator for its payment, but do not discharge the lien upon the property mortgaged, or otherwise pledged for its security.

Notwithstanding such presentation and rejection without appeal, it is still the duty of the administrator to redeem the property insured, by the payment of the assessments against the policy.

Where an estate is administered in the insolvent course, the private claim of the administrator against the intestate cannot be allowed on the settlement of the account of administration, unless the citation for such settlement shall contain a notice of the nature and amount of such private claim.

An administrator is not authorized by law to defray the expenses of fencing a private burial place, where the intestate and some of his relatives were interred.

As between the administrator and the heir, a heavy stove, placed by the ancestor in a chimney having no fire-place, without legs, set on brick work, with a short funnel bricked around in the chimney, so as to render it doubtful whether it could be removed without disturbing the brick-work, is to be regarded as real estate.

The time and expenses of an administrator in attending probate court, and the fees of counsel necessarily employed there, are part of the just expenses of administration, for which a reasonable compensation is to be allowed the administrator.

An administrator should be charged with the value of personal property belonging to an estate, and lost through his negligence, although it never came into his possession.

APPEAL from the decree of the judge of probate for this county, allowing the account of the appellant as administrator

*de bonis non* of Thomas Tuttle. At the July term, 1854, the case was referred to an auditor, who made his report December term, 1854. From his report and the accompanying papers the facts in the case appear as follows :

Thomas Tuttle died October 4, 1851, leaving no descendants. His widow, Christiana R. Tuttle, was soon after appointed administratrix. On the first Tuesday of December, 1851, the estate was decreed to be administered in the insolvent course, and a commissioner appointed, who immediately gave the notices required by law. The widow died April 3, 1852, having devised her real and personal estate to the appellee, who administered upon her estate. At the April term, 1852, of the probate court, the appellant was appointed administrator *de bonis non* of Thomas Tuttle. Upon the petition of the appellee, the appellant was subsequently cited to settle his administration account, and it was finally settled at the January term, 1854, of the probate court, the decree charging the appellant with a balance of $16.15¾ in his hands as administrator ; from which decree an appeal was claimed and taken.

The first reason of appeal assigned was, because the judge of probate disallowed certain sums paid by the appellant for insurance of real estate belonging to the deceased. Thomas Tuttle in his life-time had effected insurance on his buildings in the Atlantic Mutual Fire Insurance Company at Exeter. After his death, on the 1st of January, 1852, an assessment of $16.64 was made by the company on his premium note ; $13.35 of which was for losses occurring prior to his death, and $3.29 thereof for losses occurring subsequent to that event. This assessment was duly presented for allowance by the commissioner of insolvency, and was rejected by him. A further assessment of sixty-four cents, for other losses subsequent to the death of the intestate, was made January 1, 1853. The administrator paid both assessments, but the judge of probate disallowed him therefor. The auditor allowed him the sum of $3.93 on account thereof, being the amount of both assessments,

so far as they were for losses happening subsequent to the death of the intestate.

The second ground of appeal was, because the judge disallowed the private claim of the appellant against the estate of the deceased. It appears from a copy thereof, annexed to the auditor's report, that the citation for settlement contained no notice of the existence of this claim. The judge declined to allow it, and the auditor coincided with him in opinion.

The third cause of appeal assigned, was, because the judge refused to allow the expenses of fencing the burying-ground where the deceased was interred. The appellant had paid $20 towards the expense of fencing in a permanent manner the place where the intestate and some of his relatives had been buried. The estate was fully solvent. This claim was disallowed both by the judge and the auditor.

The fourth reason of appeal related to the disallowance of a physician's bill, for services rendered during the last sickness of the deceased intestate, but was abandoned before the auditor, and is not insisted upon here.

The fifth reason of appeal was, because the judge disallowed a portion of the appellant's charges for his time, attendance, and expenses at probate court. It appeared that in some instances the charge for attendance was reduced by the judge from three dollars to two dollars per day, and in others the charge for expenses was wholly disallowed. The auditor agreed with the judge in rejecting these portions of the appellant's account.

The sixth ground of appeal was, because the judge disallowed some portion of the expenses incurred by the appellant for counsel and attorneys' fees in the probate court, reducing the amount paid two of the attorneys, and rejecting wholly an item of two dollars, which the auditor finds to have been paid by the appellant to prevent his being sued on what he considered an unjust and wholly unfounded claim. The whole amount thus disallowed was fifteen dollars. The auditor's report confirms the decision of the judge of probate in relation to these items.

Tuttle *v.* Robinson.

The seventh reason of appeal was, because the judge charged the appellant with certain fixtures to the realty of said estate as personal property. The appellant was charged by the judge with two old Franklin stoves, at four dollars each, and two benches, at twenty-five cents, which the appellant contended were so affixed to the real estate as to belong thereto. Both stoves were set in the house of the intestate in chimneys which had no fire-places during the life-time of the intestate, at a time when the chimneys were rebuilt or remodelled. One in the bar-room was set on brick work, without legs, with a very short funnel, bricked round in the chimney, and weighed about three hundred pounds. The auditor finds it doubtful whether it could be removed without disturbing the brick work. The other, in the dining-room, stood on legs, weighed about one hundred and fifty pounds, had a short funnel passing into the chimney, and might be removed without disturbing the brick work. The auditor charges the appellant with the last stove, and also with the benches, which did not appear to have been in any way affixed to the realty.

The eighth reason of appeal was, because the judge charged the appellant with personal property not belonging to the deceased, and which never came to his hands as administrator. The auditor finds that two turkeys, belonging to the deceased, after his death went to the house of Daniel Tuttle, and there remained several months, when he disposed of them. It did not appear that the appellant ever had them in his possession, or ever called on Daniel Tuttle for them. The judge charged the appellant with fifty cents as the value of the turkeys, and the auditor concurred in this judgment.

The auditor permitted the appellant to testify as a witness in chief before him, in regard to his claims against the estate, arising after the decease of Thomas Tuttle, and as to certain articles, not inventoried, with which he had been charged by the judge of probate, against the objection of the appellee. In testifying in relation to his charges for attending probate court, the auditor allowed the witness to refresh his memory as to the

times of such attendance, by looking at a memorandum which he testified was made by him at or about the several dates of his attendance, and which he knew to have been correctly made, and to be true ; whereby he was enabled to swear positively to the times of his attendance. The appellee objected to this course of the auditor, in thus permitting the witness to refresh his memory by examining the memorandum.

*Christie & Kingman*, for the appellee.

1. The administrator, being an interested witness, (as heir and otherwise) should not have been admitted to testify in his own case to facts that must have been equally well known to others, who were disinterested, and might have been called ; and this was the case of the administrator touching the stove, and the payments to the insurance company. *Mathes* v. *Bennett*, December term, S. C. J., 1848, in Strafford. The report of the auditor was recommitted for a new hearing, because the auditor had allowed the administrator to testify.

2. Upon the facts stated, the *stove* is not shown to be a fixture ; and as stoves are ordinarily personal estate, the burthen of proof was on the administrator to show it a fixture, which his evidence does not do, even admitting his own testimony.

Whether this stove is held to be a fixture or a movable, is quite immaterial to all concerned, except as it may bear upon the question of costs in this case ; it belonging in fact and going in fact to the same persons in interest, whichever way it is held.

3. As to the money paid for insurance, whatever claim the insurance company had upon the administrator was and must be upon and through the premium *note* and *contract* of the intestate, to and with them ; for neither the appellant nor the said administratrix made any new or other express contract with said company, nor did any thing from which any such new or other contract could be inferred ; and thus whatever payments the appellant has made to said company, have been made upon and in fulfillment of a note or contract to and with them, by the intestate, in his life-time, and not upon any contract, express or

implied, between said company and this appellant. And the claim of said company, resting upon and growing out of a contract made between them and the intestate, in his life-time, was like other claims against him, or his estate, arising upon contracts made with him in his life-time, and can have no preference or priority over them. Hence, as his estate was administered as an insolvent estate, the administrator could pay no claims that were not allowed against it by the commissioner, or on appeal from his decision ; unless it be such a claim as the statute has authorized the judge of probate to allow, without going before the commissioner, as rates, taxes, funeral expenses, &c. Now we think it clear that this insurance claim, or any part of it, was not of the latter class, though the auditor seems to have allowed the $3.93 as such. And as no part of it was allowed by the commissioner, though all but $0.64 of the whole $17.28 had accrued and was liquidated, and actually presented to the commissioner for his allowance, before the expiration of his commission ; and as no appeal was taken, the company must be held to have abandoned the claim. And at all events the administrator had no right, or was under no obligation to pay it, and has no right to charge it in his administration account.

Again : if there was or is any liability of any administrator of said intestate to pay said assessment, it must have been upon the widow, who was administratrix at the time the said $16.64 was assessed, on the 1st day of January, 1852, and for three months afterwards. It could not be a claim upon or proper charge of expense of administration by the appellant, as he was not appointed administrator for more than three months after this assessment.

If there was any implied or legal obligation upon the representative of said intestate to pay said insurance money, or any part thereof, it must have been upon the administratrix, and not the appellant ; since she represented the intestate at the time of the losses and assessments, allowed by the auditor, all but the $0.64 ; and whether that loss occurred in her time, or in that of the defendant, does not appear.

Further : we submit that the moment the estate was decreed to be administered in the insolvent course, and notice thereof given, (if not before) the company were thereby absolved from all further liability' on the policy, and the insurance from that time. ceased ; and no recovery for a loss happening after such decree and notice could have been had against said company, unless upon some express or implied recognition, by the parties, of the continued subsistence of the contract.

We think the case of *Burbank* v. *The Rochester Company* does not cover this case.

4. The administrator and his counsel complain that the judge and auditor have not allowed enough for counsel fees, administrator's services, and expenses. ' We complain that too much has been allowed in all these cases ; and that the expense of administration, *as allowed,* is. unusually and unreasonably large, and pray that the same may be reduced.

We further submit, that this appeal is vexatious, and we think intended to protract the administration, and thus allow the appellant to control the real estate, against the wish of said Robinson, who owns one half of it, but is kept out till the insolvent *administration is closed.*

5. If the court here, upon the evidence reported, find that the judge of probate was right on the two points on which he and the auditor differ, then our client will be entitled to costs ; but if not so, still, as we prevail in the main particulars, our client is not to be subjected to the payment of costs. *Griswold* v. *Chandler*, 6 N. H. 61 ; *Mathes* v. *Bennett*, 1 Foster 203.


*W. B. Small*, for the appellant.

1. The administrator was properly admitted to testify as to all matters embraced in this appeal, except his private account, and about that he was not admitted to testify, and that account was disallowed. *Fuller* v. *Little*, 7 N. H. 539 ; *Hoyt* v. *French*, 4 Foster 198 ; and he was properly allowed to refresh his memory from his written memorandum. *Haven* v. *Wendell*, 11 N. H. 112 ; *Watson* v. *Walker*, 3 Foster 471.

2. Procuring an insurance is simply a mode of keeping the estate in repair. This estate was administered in the insolvent course, and the administrator was bound to keep the real estate in repair; Revised Statutes, chap. 159, sec. 10; and he was authorized to effect an insurance upon it. *Burbank* v. *Ins. Co.*, 4 Foster 550; and, of course, was authorized to continue an insurance already effected by the intestate, and to pay the assessments thereon; and, in case of loss, claim the benefit of the insurance; for where a contract with the deceased is of an executory nature, and the personal representative can fairly and sufficiently execute all that the deceased could have done, he may do so and enforce the contract. 1 Parsons on Contracts 111

By continuing the insurance, and not surrendering the policy, the administrator became a member of the corporation; Act of Incorporation, sec. 3; and he became bound to pay the assessments; Idem, sec. 7; and if he had neglected to pay them, the policy would have been liable to be suspended or terminated. By-Laws, art. 9. The continuing of this insurance, and paying the assessments made after the death of the intestate, was nothing more than the exercise of a sound discretion in the ordinary administration of an insolvent estate, and the assessments were no more to be presented to the commissioner than an administrator's bills for the repairs of the buildings. This claim was properly not taken into consideration by the commissioner. It can make no difference that a portion of the losses upon which the first assessments were made, occurred before the death of the intestate. The assessments were made afterwards. It is the assessments that the assured contracts to pay; and each assessment is absolutely one thing and indivisible, and we say the administrator, having paid the whole assessment, should be allowed the whole.

3. The administrator should be allowed the $20 for fencing the burying ground. It was but a proper exercise of his authority to keep the real estate in repair. May an administrator be allowed to repair the barns and sheds for the cattle that

the intestate has left, and not be allowed to erect a fence to protect from intrusion and depredation the grave where the deceased reposes ?

4. The full amount of the account for the personal services of the administrator should be allowed. The report finds that the services were performed, and that the expenses were reasonable.

5. The amount paid for counsel fees was paid in good faith for services actually performed, and the administrator, acting under the advice of counsel, should be protected. In fact, all the sums except the last item accrued in resisting, and successfully, too, the improper charges in the other administrator's account, and in charging him for property for which he had not accounted.

6. It is objected that the evidence offered under the last two heads, embracing the account for the personal services of the administrator, and for sums paid counsel, was incompetent ; that we are to be confined to the record, in showing what was allowed or disallowed by the judge ; and that the paper annexed to the report, and marked X, embracing these two branches of the account, should not be considered. Our answer is, that that paper is a part of the record ; the two papers (the one made out by direction of the judge and the one annexed) make the record perfect. The one in question was the original paper, constituted a part of the original account, was filed in the probate office according to the order of the judge, and remained there until the hearing — nearly two months ; and the only effect of accidentally taking it away, after the hearing, instead of again placing it on file, after the new paper was made out under the dictation of the judge, is to change the mode of proving the record ; that which remained on file being proved by an office copy, and the other by its production ; and either mode is allowable in this case, as this is a proceeding in a superior court of probate.

7. We say it is competent for the court to render judgment for the whole amount of the items embraced in the appeal, inasmuch as the auditor has stated the facts concerning them. But

if we are wrong in this, we claim to have the report recommitted, with instructions to allow the items not allowed.

8. We claim full costs, being the prevailing party.

FOWLER, J.  The first question suggested by the arguments of counsel, relates to the admission of the appellant as a witness in chief by the auditor.  It was in the discretion of the auditor to admit him or not, and we see no reason why the discretion was not properly exercised.  The appellant was not permitted to testify in regard to his private claim, arising before the death of the intestate, in regard to which there might be supposed to have been some injustice in allowing him to testify. That claim was rejected by the auditor, as not properly before him.  As to matters arising after the death of Thomas Tuttle, especially all transactions relating to articles not inventoried, with which the appellant had been charged, we perceive no stronger objection to receiving his testimony, than exists to the testimony of any other party in any other case.  It does not appear but that every person conversant with the matters about which he testified, was alive and within reach of process.

It is the general practice in this State for auditors to receive the testimony of either party to a suit, and the court will not interfere with a report because one of the parties has been permitted to testify, unless it is perfectly clear that injustice has been done.  *Hoyt* v. *French & a.,* 4 Foster 202 ; *Stevens* v. *Hall,* 6 N. H. 508 ; *Mann* v. *Locke & a.,* 11 N. H. 246.

There can be no doubt the appellant was properly permitted to refresh his memory by looking at the memorandum.  Although a witness can testify only to such facts as are within his own knowledge and recollection, yet he is permitted to refresh and assist his memory by the use of a written instrument, memorandum, or entry in a book.  It is not necessary that the memorandum should have been made by the witness, if he saw it made and knew it to be correct at the time, in order to render the memorandum itself competent evidence for the jury.  1 Greenleaf's Ev., secs. 436, 437, and notes ; *Haven* v. *Wendell,*

---

---

11 N. H. 112 ; *Watson* v. *Walker*, 3 Foster 471 ; *Webster &
als.* v. *Clarke*, 10 Foster 245.

The insurance company, having made assessments upon the
premium note for losses occurring subsequently to the death of
Thomas Tuttle, were undoubtedly estopped to deny the validity of
the insurance after that event.   They recognized the contract as
subsisting, by making assessments for losses, for which, if the pol-
icy were vacated, the personal representative was in no way
liable, as only members of the company were liable for their
portion of losses.   The company having made such assessments,
and the administrator having paid them, whether there was or
was not any application for or previous assent by the adminis-
trator to the continuance of the insurance, there would seem to
be no doubt that the buildings continued to be insured during
the term of the policy, and that the administrator should be
allowed whatever he paid as assessments for losses happening
after the death of the intestate, on the ground that it was his
duty to preserve the property while in his care.   *Burbank* v.
*Rockingham Ins. Co.*, 4 Foster 550.

But the administrator is entitled to be allowed for the whole
amount of assessments paid by him on other and more satisfac-
tory, and, as it seems to us, entirely conclusive grounds.

By the 7th section of the charter of the Atlantic Mutual Fire
Insurance Company, a copy of which makes part of the audi-
tor's report in this case, it is provided that " all buildings, and
the land upon which they stand, and the property insured therein,
shall be held by such company as security for any deposit note
which they may hold of the member for whom they have in-
sured; and the policy of insurance to any member of said company
upon his buildings or other property, shall of itself create a lien
upon the same for the sum of any such deposit note and the cost
which may accrue in collecting the same ; and such lien shall
continue during the existence of said policy and the liability of
the assured therein, notwithstanding any transfer or alienation."

This provision gave to the insurance company a valid lien
upon the property of Thomas Tuttle for the payment of his pro-

portion of the losses happening in his life-time, as well as those accruing after his death, during the continuance of the policy, to the amount of his deposit note. The existence and validity of such a lien has been often recognized by the courts in numerous decisions. Many of these may be found collected in *Marshall* v. *Insurance Company*, 7. Foster 157, 166, 167.

By the 11th section of the 159th chapter of the Revised Statutes, it is made the duty of the administrator, " if there are sufficient assets, to redeem all property of the deceased under mortgage, pledge or levy of execution, for less than its value, or which, if unredeemed, would diminish the value of the estate, unless he shall by license sell the same subject to such incumbrance ; and the neglect so to redeem shall be deemed mal-administration and waste."

By the 10th section of chapter 162, of the Revised Statutes, relating to insolvent estates, it is enacted that " if any creditor holds collateral security for his debt, of less value than such debt, the commissioner shall estimate the value of such security, and allow him only the difference between such sum and his debt, and shall return with his report, and give to such creditor on request, a certificate of such estimate." By the 11th section of said chapter it is provided, that if the creditor is dissatisfied with such estimate, and shall relinquish his interest in such security, and deliver up the same to the administrator, the property thus surrendered shall be sold by the administrator under the direction of the judge, and the proceeds paid to the creditor, and the difference between the sum so paid and the amount of his claim be inserted upon the list of claims, in place of the sum allowed by the commissioner."

Now, if the security holden by a creditor is of greater value than his debt, the statute requires the administrator to pay the debt, under penalty of being adjudged guilty of mal-administration and waste for neglect so to do. Does the statute contemplate the presentation of claims of this character to a commissioner for allowance, and does the non-presentation of such claim, or the rejection of such claim, if presented, and no ap-

peal taken, deprive the creditor of his security for the payment thereof? We think not.

By the 15th section of the 163d chapter of the Revised Statutes, it is enacted that " all demands against any estate which might be presented to the commissioner, and were not so presented, and all demands so* presented and rejected, and not allowed upon appeal, shall be forever barred;" thus placing claims not presented, and those presented and rejected, and not allowed on appeal taken, in precisely the same position. Taking into consideration the other provisions of the statute to which we have referred, we have no doubt that when the provisions of this section are applied to debts secured by mortgage, pledge or lien, of greater value than the debts, it must be understood that such debts are not properly presentable to the commissioner, or that, if not presented, or if presented and rejected and no appeal taken, they are barred only so far as any right to the general funds belonging to the estate in the hands of the administrator for their payment is concerned. It is clear that the legislature could not have intended to declare that the non-presentation to a commissioner of a debt secured by mortgage or pledge to double its amount, should forever bar or discharge the lien of the creditor upon the property mortgaged or pledged for its security, for they have made it mal-administration in the administrator not to redeem such property by the payment of the debt. But claims not presented, are, by the terms of the statute, as much barred as those presented and rejected and not allowed upon appeal taken. It seems equally clear that they could not have intended that the presentation of such debt to the commissioner, and its rejection by him and no appeal taken, should bar the right of the creditor to the security holden for its payment, for that would be to compel a creditor whose debt was fully secured to pursue his remedy against an insolvent estate without any possible object to be attained. It would be to deprive one whose whole debt had been abundantly secured by the deceased in his life-time, of all benefit and advantage therefrom, without any cause, by a mere arbitrary enactment.

We can, therefore, come to no other conclusion than that debts fully secured by mortgage, pledge or lien, are not within the intent of this section of the statute, and are not affected by its provisions, so far as concerns the property mortgaged or pledged for their payment. The fact of their not having been presented to the commissioner, or of their having been presented and rejected and no appeal taken, in no way affects the validity of the lien upon that property.

The insurance company, then, having, notwithstanding the rejection of their claim by the commissioner, a valid claim on the buildings of Thomas Tuttle, and the land whereon they stood, for the payment of his proportion of all losses happening in his life-time, and subsequently, during the continuance of the policy, and that property being of greater value than the debts for whose payment it was pledged, it became the duty of the appellant, as his administrator, to redeem the property for the benefit of the estate, by the payment of those debts. Having paid them, he is clearly entitled to be allowed therefor in his administration account.

No notice having been given in the citation for the settlement of his account of administration, of the existence of a private claim of the administrator, as required by the statute, it was properly rejected both by the judge of probate and the auditor. No such claim can be allowed, unless notice of its character and amount has previously been given in the citation. Comp. Stat., chap. 171, sec. 16 ; *Abbe* v. *Norcott,* 8 N. H. 51.

In regard to the expense of fencing the burying place where the deceased and some of his relatives were interred ; if those interested in the estate saw fit to object to its allowance, we are not aware of any law to justify it. The statute authorizes the administrators of estates actually solvent, to erect suitable monuments at the graves of their testators or intestates, (Comp. Stat., chap. 168, sec. 16,) but makes no provision for enclosing private burial grounds. As cemeteries are generally provided and properly fenced at the public expense, it may not have been deemed advisable, as a matter of policy, to encourage the establishment of private burial places.

The fourth reason of appeal having been abandoned before the auditor, and not renewed here, does not present itself for consideration.

In regard to the amounts allowed for the per diem and expenses of the administrator while attending probate court, uniformity is important, and ordinarily the judge of probate has a general rule on the subject; and it is to be presumed his allowances in any given case are in conformity with such rule, until the contrary is shown. Judging from the facts disclosed in the auditor's report, we infer that the practice in Strafford under the present judge of probate is to allow two dollars per day for attending court, without expenses; and if so, the appellant has no cause of complaint that he has not been allowed the ordinary compensation, for whenever he attended two consecutive days an additional allowance of one dollar seems to have been made him. Every estate is chargeable with the just expenses of the administration thereof, among which are the time and personal expenses of the administrator; but what, under all the circumstances, is a reasonable compensation for these at each term of the court when his attendance may be required, the judge of probate, from his position, knowing all the particulars of the service, would seem better qualified to decide than any other tribunal. In the present case, as the auditor before whom the appellant testified in chief, confirms his judgment, and there is nothing to impeach it, we are not disposed to reverse it.

Among the rejected items is a charge of " one day at Dover, to file bond," and we are satisfied this was properly disallowed, for no reason is shown why the bond might not as well have been forwarded by mail, as to have required the personal attendance of the appellant to deposit it in the register's office.

The remarks already made in relation to compensation for the personal services of the administrator, apply with equal force to that of counsel. If an administrator finds it necessary to employ counsel in the probate court, he must be understood to do it, subject to the control and supervision of the tribunal whose duty it is to determine in the first instance what are the just ex-

penses of administration, with, of course, a right to appeal from the decision. In the present instance all the services whose compensation is reduced were rendered before the probate court, and the fair presumption is, that, in the opinion of the judge, some portion of them was not needed, or did not answer any useful purpose to the estate. From the auditor's report, they would seem not to have been very successful. From whatever cause they may have been originally reduced, as the auditor confirms the decision of the judge of probate, and we have nothing whereby we feel at liberty to overrule their decision, it must stand as correct. As to the two dollars paid by the appellant to avoid being sued on what he considered an unjust and unfounded claim, we think the interests of the community would not be promoted by the establishment of a precedent for levying contributions on the estates of deceased persons in that mode.

The size, location and manner of attachment to the chimney of the bar-room stove, as described in the auditor's report, taken in connection with the fact that it had been annexed by the ancestor for the benefit of the inheritance, and was necessary to its enjoyment, seem to justify the auditor in discharging the appellant from its value, although the evidence before him only rendered it doubtful whether it could be removed without disturbing the brick work.

In *Kittredge* v. *Woods*, 3 N. H. 504, it is said by the court, "it seems to be settled, that, in general, whatever has been in any way annexed to the freehold, for the benefit of the inheritance, and is necessary for its enjoyment, shall go to the heir." And it was suggested that manure, which might have been carried and left upon the field in heaps for dressing, would go to the heir under this rule. *Same Case*, 505.

In *Farrar & a.* v. *Stackpole*, 6 Greenl. 154, it was held that by a conveyance of a saw-mill, with its appurtenances, the mill chain, dogs and bars passed to the grantee, although not attached or fastened to the building.

In *Lawton*, Exr., v. *Salmon*, reported in 1 H. Blackstone 259, note, which was an action of trover, brought by the executor

against the tenant of the heir at law, to recover the value of certain salt pans, which the testator some years before his death had placed in his salt works, and which were of hammered iron rivetted together, brought in pieces and movable in the same way, not joined to the walls but fixed with mortar to a brick floor, and might be removed without injuring the buildings, although the salt works could not be operated without them, Lord Mansfield remarked : " The inheritance cannot be enjoyed without them. They are accessories, necessary to the enjoyment and use of the principal. The owner erected them for the benefit of the inheritance. He could never mean to give them to the executor, and put him to the expense of taking them away, without any advantage to him who could only have the old materials, or a contribution from the heir in lieu of them."

As between the executor and the heir, the decisions seem to rest mainly on the principle, that where the fixed instrument, machine or utensil, is an accessary to a matter of a personal nature, it should itself be considered as personalty ; but where, as in this case, accessary to the realty, then it will be regarded as a fixture, and go to the heir. *Lawton* v. *Lawton*, 3 Atkins 13 ; *Dudley* v. *Ward*, Ambler 113 ; *Lawton*, Exr., v. *Salmon*, before cited ; *Elwes v. Maw*, 3 East 38 ; *Despatch Packets* v. *Bellamy*, 12 N. H. 232.

Upon the facts stated, there can be no question in regard to the benches, which must be considered as personal estate.

The eighth and last reason of appeal, was, because the judge charged the appellant with personal property not belonging to the intestate, and which never came into his possession. The only controversy was respecting two turkeys, for which the appellant was charged in the probate court. The auditor finds them to have belonged to the intestate, to have wandered to a neighbor's or relative's house, after his death, and there to have remained several months, when they were disposed of by the person at whose house they were. They had never been in the appellant's possession, nor had he ever called for them. It was manifestly his duty to collect the personal property, and if any

of it were wrongfully converted, to recover its value. Not having done so, he should be charged for the loss which the estate has suffered through his neglect of duty.

Upon the whole, therefore, we are of opinion that the finding of the auditor is correct, with the exception of the insurance assessments for losses occurring in the life time of the intestate ; and the decree of the judge of probate having been vacated by the appeal, a new decree must be made, reversing the former one, and finding due to the appellant from the estate a balance of $5.12¼, instead of charging him with a balance of $16.15¾, as formerly decreed by the judge of probate.

As the appellee has prevailed in relation to the most important matters in controversy, and on the larger portion of the reasons of appeal, notwithstanding the change in the general result as to balances, the appellant cannot be allowed costs, but each party must pay his own, agreeably to the rule established in *Griswold* v. *Chandler*, 6 N. H. 61, and recognized in *Mathes* v. *Bennett*, Adm'r, 1 Foster, 203.

*Decree reversed without costs.*