EDGAR A. IGLEHEART, EXECUTOR, CORA B. IGLEHEART, EXECUTRIX, ESTATE OF ADDISON W. IGLEHEART, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52042. Promulgated August 8, 1933.

*John E. McClure, Esq.*, for the petitioners.
*Frank T. Horner, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: For the purposes of our discussion the questions to be determined herein may be grouped as follows:

I. Were certain transfers made by the decedent prior to his death made in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death?

II. Is section 302 (c) of the Revenue Act of 1926, in so far as concerns the so-called "conclusive presumption" thereof, constitutional?

III. Should there be included in the gross estate the value, at the date of decedent's death, of certain transfers made by him, where the value at the date of death is in excess of the value at the date of the transfer, and is such inclusion constitutional?

IV. Are the petitioners entitled to the deduction of the amount of an obligation incurred by them for the perpetual care of a cemetery lot and mausoleum?

V. To the extent of their excess over $40,000, should the proceeds of certain insurance policies be included in the gross estate?

VI. Should any part of the value of certain Federal Farm Loan bonds be included in the gross estate for Federal tax purposes?

I. and II. The respondent contends that the value of the assets of the trust of which decedent's wife, Cora B. Igleheart, was trustee was included lawfully in the gross estate for the reason that the creation of the trust was a transfer in contemplation of or intended to take effect in possession or enjoyment at or after the death of the decedent, within the provisions of section 302 (c) of the Revenue Act of 1926. He also contends that a transfer in contemplation of death within the intent of the statute occurred in each of the following transactions: The purchase by the decedent of an endowment insurance policy of $100,000 on his wife's life; the making of a cash payment by the decedent as part consideration for a house in Florida, title to which was taken in his wife's name; and the payment of income taxes due from the Cora B. Igleheart trust.

Section 302 of the Revenue Act of 1926 reads, in part, as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment

of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

The so-called " conclusive presumption " contained in the second sentence of section 302 (c) has been pronounced unconstitutional. *Heiner* v. *Donnan*, 285 U.S. 312. To this extent petitioners' contention is sustained. This, however, is not an end of the matter.

Under the valid provisions of the section, the petitioners must establish by a preponderance of evidence that the transfers in question were not, in fact, made in contemplation of death or intended to take effect in possession or enjoyment at or after the decedent's death. *J. Bertram Lippincott et al., Executors*, 27 B.T.A. 735. The petitioners contend that the transfers here in question were induced by motives different from contemplation of death and that none of the transfers were intended to take effect in possession or enjoyment at or after the death of the decedent.

In *United States* v. *Wells*, 283 U.S. 102, the Supreme Court has definitely established the tests to be applied in determining whether any particular transfer was made " in contemplation of death." In that case the court interpreted the phrase " contemplation of death " as used in section 402 (c) of the Revenue Act of 1918. The phrase is used similarly in section 302 (c) of the Revenue Act of 1926. In the *Wells* case the Supreme Court said, *inter alia:*

* * * Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. *Nichols* v. *Coolidge*, 274 U. S. 531, 542; *Milliken* v. *United States*, ante p. 15. As the transfer may otherwise have all the indicia of a valid gift *inter vivos*, the differentiating factor must be found in the transferor's motive. Death must be " contemplated ", that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * * The question, necessarily, is as to the state of mind of the donor.

The Supreme Court also said:

As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of

death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words " in contemplation of death " mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is " near at hand."

In the search for the motive inducing the transfers in this proceeding, we do not find such a state of facts as appeared in the *Wells* case, in which the Court of Claims had held that the immediate moving cause of the transfers there in question " was the carrying out of a policy, long followed by decedent in dealing with his children, of making liberal gifts to them during his lifetime." In the present proceeding there is no evidence of any policy on the part of the decedent of making gifts prior to the transfers in question. The picture here is that of a man of 74 years or more of age whose physical activities had been greatly limited for about 11 years because of a hemiplegia resulting from a so-called stroke. In other respects he was apparently in good health. He was thoughtful, intelligent, cheerful and interested in the affairs of the business with which he had been connected for many years.

In April 1926, as a result of the redemption of the preferred stock of Igleheart Brothers of Indiana, and as a result of the sale of that corporation, the decedent found himself possessed of a large amount of free capital. He talked about its investment with his brothers, who were relatively in the same position as himself. He consulted his counsel. Shortly thereafter, on June 1, 1926, he executed three instruments prepared by his counsel at his request, namely, (a) the irrevocable trust for the benefit of his wife during her life with remainder over; (b) a revocable trust for his own benefit for life with the remainder to his children and grandchildren; and (c) his last will and testament.

Of the trusts created by the decedent June 1, 1926, when he also executed his will, only the transfer effected by the execution of the trust to Cora B. Igleheart is here in question. In respect to this transfer it is our opinion that the evidence discloses testamentary intent and therefore the motive inducing it was contemplation of death. *United States* v. *Wells, supra; Heiner* v. *Donnan, supra; J. Bertram Lippincott et al., Executors, supra.*

The evidence shows that the decedent and his brothers were concerned about the investment of their newly acquired free capital.

They wanted to invest it in such a way that in the event of their "absence" their "wives would not have the burden of it, in the care of it." The natural conclusion is that the "absence" referred to is that permanent separation effected by death. While the decedent and his brothers did not discuss the possibility of the decedent's death, the evidence further shows that they, including the decedent, considered that they ought to be "prepared for any eventuality" by getting "their estates fixed up." The decedent was then over 74 years of age and the hemiplegia, resulting from the stroke, which seriously limited his locomotion, undoubtedly furnished him a constant reminder of the uncertainty of life. What then was the "eventuality" in preparation for which the decedent wished to have "his estate fixed up?" The answer is patent. What the decedent had in mind was so to dispose of his property that his estate "would be fixed up" finally in preparation for his death. The evidence shows that he wanted so to dispose of his property when there was "no rush" and he was "clear-headed."

Another significant bit of evidence is found in the statement of the lawyer to whom decedent entrusted his confidence and the drafting of the trusts and his will, all executed June 1, 1926. Asked if decedent made any statements indicating the reason for executing the will at the same time the trusts were executed, he replied: "Yes, that inasmuch as the trust made a certain disposition as to that part of the property that was to go to his children he wished to indicate the way the remainder of his estate should go, outright, as to his wife and children." To us this statement speaks with striking clarity. It enunciates the same testamentary intent in the making of the trusts as in making the will. Moreover, it is consonant with the recitals of other witnesses above referred to. Short of a deliberate declaratory statement of purpose, it would be difficult to conceive better proof of a testamentary intent than is found in these excerpts of testimony when coupled with the actual execution of the three documents—the trusts and the will—on the same day. The motive, therefore, which induced the decedent to execute, on June 1, 1926, the Cora B. Igleheart trust was the same motive which induces testamentary disposition of property and which in fact induced the decedent to execute his last will and testament on the same date. The inducing motive was contemplation of death.

The petitioners contend that the main motive inducing the transfer to Cora B. Igleheart, as trustee, of a part of the decedent's property was his desire to give her, for life, an independent income consistent with his means. In support of their contention in this respect the petitioners rely largely on the testimony of decedent's counsel who prepared the three instruments referred to. The latter

testified that during his consultations with decedent concerning the drafting of the instruments, the decedent informed him that since he, the decedent, for the first time in his life was possessed of ample free capital he wished to give his wife an independent income consistent with his means. This desire of decedent is not inconsistent with testamentary intent with respect to the trust in her favor. Every person executing a testamentary instrument thereby exhibits a desire to give something to the beneficiary named therein. The decedent's counsel also testified that the decedent told him that he wanted his wife to get experience in handling investments and the petitioners contend that this statement is evidence that the motive inducing decedent to execute the trust to his wife was not, in fact, testamentary in character. There appears no special reason why the decedent's wife should have managed investments while the decedent remained alive and the expression of his desire to have her learn to manage investments seem to us to be evidence that when he made such statement he was contemplating his death, as a result of which his wife would become one of the executors of the last will and testament, charged with the management of a large estate.

Petitioners' counsel also stresses by questions to his witnesses that decedent was of a cheerful, optimistic disposition, concerned with living, never morose and never given to discussing the eventuality of death and argues therefrom that this state of mind was not consistent with the contemplation of death or a testamentary purpose. If any act can be said to be done in contemplation of death, it is the making of a will. It is the most usual testamentary disposition. Yet the prudent man makes his will while in the full vigor of life. The prefatory words to most wills refer to the sound and disposing mind of the testator. Though the making of a will is a testamentary act, provocative of solemnity, nothing could be further from truth than the impression that such acts are not performed by persons of cheerful, optimistic dispositions, uninfluenced by the shadows of approaching death. Yet, the Supreme Court has said, such acts are in contemplation of death.

The humor and disposition of the person is no necessary indication of a testamentary purpose or of its absence.

These contentions of the petitioners, together with their contention that one reason for the execution of the Cora B. Igleheart trust was the decedent's wish to reduce his income tax, are not, in our judgment, of sufficient weight to overcome the implications of the other evidence already referred to which points strongly to the fact that the execution of the Cora B. Igleheart trust was induced by the same motive which induced the decedent to execute his will, namely, the contemplation of death.

On all the evidence we hold that the petitioners have failed to prove that the transfer to Cora B. Igleheart, as trustee, was not in fact made in contemplation of death.

The petitioners have presented no evidence relating directly to the motive inducing the decedent's purchase, in August 1927, of the $100,000 endowment policy on the life of his wife, the purchase price of which was included by the respondent in the gross estate. It would perhaps be fair to presume that this gift was induced by the same motive as the transfer to Cora B. Igleheart, as trustee, namely, contemplation of death. In any event, petitioners, who had the burden of proof, have not proved the contrary. Therefore, the cash surrender value of the policy at the date of decedent's death, $94,500, should be included in the gross estate.

It appears that in addition to the full corpus of the estate, the respondent included in the taxable gross estate the sum of $25,672.63, which amount had been paid by the decedent during 1927 for and on account of income taxes for the year 1926 assessed against the Cora B. Igleheart trust. It was stipulated that the payment was made " in order to keep the capital of the trust intact." This payment did not remain in the corpus of the trust. In effect it merely passed from decedent through his wife's hands to the Government as income taxes. It was not in the estate at decedent's death. Except for this payment the corpus of the estate would have been depleted by $25,000 and the taxable estate would have been correspondingly less. Respondent has included the full amount of the estate. Therefore, the inclusion in the taxable gross estate of this payment constitutes a duplication of the amount.

It is our opinion that the payment of $40,214.48 by the decedent as cash consideration for the house in Florida, title to which was taken in the name of his wife, was not a transfer in contemplation of death. The petitioner and his wife had lived in Newburgh, Indiana, in a house the title to which was in his wife's name. The evidence shows that the decedent established residence at Fort Myers, Florida. As part payment for the house there the house at Newburgh belonging to decedent's wife was transferred to the owner of the Fort Myers house. The normal inference in this transaction is that the decedent was merely substituting one house standing in his wife's name for another house of like category and that any expenditure of cash connected with such substitution was not, in fact, made in contemplation of death.

III. At the date of the decedent's death the respective values of the assets of the two trusts described in the findings of fact were in excess of their values at the date of their creation. The respondent included in the gross estate the respective values at the

date of death. The petitioners contend that the inclusion of the increase in value between the date of creation of the trusts and the date of decedent's death is unconstitutional. They rely solely on the following quotation from *Heiner* v. *Donnan*, 285 U.S. 312:

Moreover, under the statute the value of the gift when made is to be ignored, and its value arbitrarily fixed as of the date of the donor's death. The result is that upon those who succeed to the decedent's estate there is imposed the burden of a tax, measured in part by property which comprises no portion of the estate, to which the estate is in no way related, and from which the estate derives no benefit of any description. Plainly, this is to measure the tax on A's property by imputing to it in part the value of the property of B, a result which both the *Schlesinger* and *Hoeper* cases condemn as arbitrary and a denial of due process of law. Such an exaction is not taxation but spoliation. "It is not taxation that government should take from one the profits and gains of another. That is taxation which compels one to pay for the support of the government from his own gains and of his own property." *United States* v. *Baltimore & O. R. Co.*, 17 Wall., 322, 326, 21 L. ed. 597, 599.

It is evident that the quoted statement is related solely to the question then before the Court, namely, whether the second sentence of section 302 (c) of the Revenue Act of 1926 is constitutional. The Court was elaborating its argument with respect to the arbitrary character of the so-called "conclusive presumption." Earlier in its opinion the Court had held that the second sentence violates the due process clause of the Fifth Amendment to the Constitution. The Court had stated, however, that "there is no doubt of the power of Congress to provide for including in the gross estate of a decedent, for purposes of the death tax, the value of gifts made in contemplation of death." In *Heiner* v. *Donnan*, *supra*, the Court discussed the nature of the tax imposed by section 301 of the Revenue Act of 1926, saying that "the thing taxed is the transmission of property from the dead to the living," citing *Knowlton* v. *Moore*, 178 U.S. 41. Citing *Milliken* v. *United States*, 283 U.S. 15, the Court said that the value of property transferred without consideration and in contemplation of death is included in the value of the gross estate of a decedent for the purpose of a death tax "because the transfer is considered testamentary in effect." It is our opinion, therefore, that in the quotation from *Heiner* v. *Donnan*, relied on by the petitioners, the Court was not suggesting that there was anything arbitrary or unconstitutional in measuring the tax on transfers made in contemplation of death by the same measure applying to all testamentary transfers of property. Such a suggestion would be inconsistent with the stated reason for including, for the purposes of a death tax, the value of property transferred without consideration and in contemplation of death.

The inclusion of the value of the assets of the two trusts at the time of the decedent's death is in strict conformity with the provi-

sions of section 302 of the Revenue Act of 1926. In *Milliken* v. *United States, supra,* a question quite similar to the one before us was involved. In that case, while the Revenue Act of 1916 was in force, the decedent gave certain shares of stock to his children. The decedent died after the effective date of the Revenue Act of 1918. The Commissioner included the shares of stock in the decedent's estate and collected a tax computed on the value of the stock at the date of the decendent's death. The Court said, in part:

> The objection to the tax, chiefly urged in brief and argument, is that the taxing statute, as applied, is a denial of due process of law because retroactive. It is said that the statute is invalid not alone because it reaches a gift made before its enactment, but because it measures the tax by rates not in force when the gift was made, *applied to the value of the property not when given, but at the uncertain later time of the death of the donor.*
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> Hence, in challenging the present tax it does not suffice to say that the gift antedated the statute. It is necessary to consider the nature of the tax and of the decedent's gift. When the gift was made it was subject to the provisions of the 1916 Revenue Act. By it, Congress had adopted the well understood system of taxation of transfers of property at death, already in force in forty-two states. \*　\*　\*
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> \*　\*　\* Not only was the decedent left in no uncertainty that the gift he was then making was subject to the provisions of the existing statute, but in view of its well understood purpose he should be regarded as taking his chances of *any increase in the tax burden* which might result from carrying out the established policy of taxation under which substitutes for testamentary gifts were classed and taxed with them. [Italics supplied.]

It is our opinion that the above quotations from *Milliken* v. *United States,* are directly applicable to the question now under consideration. Here it is urged that the taxing statute as applied is invalid because it applies the rates in force to the value of the transfers not when made, but at the uncertain later time of the death of the transferor. It appears from the evidence that at the time he executed the two trusts the decedent was advised as to the application to them of the provisions of the Revenue Act of 1926. Therefore, as suggested in *Milliken* v. *United States, supra,* under similar circumstances, he should be regarded as taking his chances of any increase in the tax burden which might result from carrying out the established policy of taxation under which substitutes for testamentary gifts are classed and taxed with them. We therefore hold that the inclusion in the gross estate of the increase in value of the two trusts between the date of their creation and the date of the decedent's death is both proper and constitutional.

IV. The respondent allowed as a deduction the cost of a cemetery lot and a mausoleum. He disallowed the deduction of the sum of $1,500 which represents an obligation incurred by the petitioners for

the perpetual care of the lot and mausoleum. The petitioners contend that this disallowance was error. This obligation was not incurred by the decedent but by the executors and therefore the question for determination is whether the amount is deductible as a proper funeral expense.

Section 303 (a) (1) of the Revenue Act of 1926 provides, in part, for the deduction of "such amounts for funeral expenses * * * as are allowed by the law of the jurisdiction, whether within or without the United States, under which the estate is being administered."

Apparently the decedent's estate was being administered under the laws of the State of Florida where the decedent had established his legal residence during his last years. Section 5541 of the laws of Florida provides, among other things, that executors and administrators shall be allowed all reasonable charges on account of funeral expenses. There is no evidence before us from which we can infer that the Florida court having jurisdiction allowed this item in the accounts of the petitioners.

It is the general rule that necessary amounts expended for the burial of a decedent are allowable out of the decedent's estate and that where the estate is solvent the amount to be allowed must vary with local custom, the station in life of the decedent, the extent of his fortune, as well as other material circumstances. Schouler on Wills, Executors and Administrators, 6th ed., vol. III, p. 2293; *Crothers* v. *Crothers*, 123 Md. 603; 91 Atl. 691; *Pierce* v. *Fulmer*, 168 Ala. 344. The respondent allowed the deduction of the cost of the cemetery lot and mausoleum in accordance with this rule. It has been held that where there is objection the expenses of fencing, preserving and improving a cemetery lot are not allowable out of the estate. *Tuttle* v. *Robinson*, 33 N.H. 104. Expenditures for perpetual care are expenditures for preservation. In some states, however, a payment to a cemetery corporation for perpetual care of a burial lot is made allowable by statute. *Hall* v. *Burgess*, 40 R.I. 314; 100 Atl. 1013. It does not appear that such is the case in the State of Florida. The statute of that state appears to contemplate allowance only of expenses necessary to the burial. Such expenses manifestly do not include the perpetual care of a cemetery lot and mausoleum. It is, therefore, our opinion that the respondent correctly disallowed the amount in question.

V. The petitioners contend that no portion of the proceeds of the 13 life insurance policies set forth in the findings of fact, the issuance of which was originally procured by Igleheart Brothers of Indiana, should be included in the taxable estate.

Section 302 of the Revenue Act of 1926 provides for the inclusion in the gross estate of the value of a decedent's property at the time

of his death to the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

The proceeds of the policies in question were receivable by beneficiaries other than the executors of the decedent's estate, but it is contended by the petitioners that the policies were not *taken out* by the decedent on his own life and, therefore, the proceeds thereof are not within the provisions of the section.

· These policies were originally taken out on decedent's life through the procurement of Igleheart Brothers of Indiana and for the benefit of that corporation. The decedent signed the respective applications for the policies. The corporation procuring the policies paid all the premiums up to about February 16, 1926. On the latter date the decedent purchased from Igleheart Brothers of Indiana all its right, title, and interest in and to the policies, paying therefor the cash surrender value of the policies, plus any premiums paid or to be paid after January 30, 1926. Thereupon, at the instance of the decedent, the beneficiaries of the policies were changed, the decedent reserving the right to change the beneficiaries further, and he paid all of the premiums falling due thereafter until the date of his death.

It is our opinion that to the extent of their excess over $40,000 the proceeds of these policies as of the date of decedent's death should be included in the taxable estate. To hold otherwise would be either to ignore the intent of the statute or to nullify it by mere technical construction. The applicable provisions of the statute should be construed as intending to include all the insurance on a decedent's life in favor of beneficiaries other than his estate which was acquired by him through the expenditure of his own money, where he has the power to dispose of the proceeds of the insurance at will. Such a construction is in harmony with the views of the Supreme Court expressed in *Chase Nat. Bank* v. *United States*, 278 U.S. 327. The tax is imposed on the transfer by death of the decedent's net estate and in the *Chase Nat. Bank* case, referring to the word " transfer " the Court said, " it must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another." When the decedent bought from Igleheart Brothers of Indiana all of that corporation's right, title and interest in and to the insurance policies on his own life he acquired, by expenditure of his own money, property rights which he intended to pass to others at his death but which, so long as he lived, he could dispose of at will. Since he originally

signed the respective applications for the insurance policies, paid the cash surrender value for the assignment to himself of the corporation's rights and immediately named new beneficiaries of the policies, the effect of the transfer was that on the date of such purchase he procured insurance on his own life, the proceeds of which were payable to beneficiaries designated by him. By this transfer he became a party to the insurance contracts as actually as if he himself had " taken out " the policies originally. The policies were owned by him like any other chose in action and his rights therein could only be defeated by forfeiture because of failure to pay the stipulated premiums. *New York Life Ins. Co.* v. *Statham*, 93 U.S. 24; *Mutual Life Ins. Co.* v. *Hurni Packing Co.*, 263 U.S. 167. Under these conditions we must hold that the acquisition of these policies by purchase was, in result, the taking out of the policies by the decedent on the date of purchase by him of all the rights thereunder. Therefore, the proceeds of the policies, to the extent of their excess over $40,000, should be included in the gross estate.

In reaching this conclusion we have not failed to consider *Bessie M. Ballinger, Executrix*, 23 B.T.A. 1312. The facts of that proceeding are distinguishable from the facts respecting the insurance here involved. That proceeding in part concerned group insurance taken out by a corporation to cover the lives of its employees. There was no evidence of any payment of money by the insured and no evidence that he had any rights under the group policy except to change the name of the beneficiary. Here, however, by the expenditure of $94,000 the decedent had had himself substituted for the corporation which originally procured the insurance, securing thereby all of the rights and privileges attendant upon ownership of the policies. *Bessie M. Ballinger*, *supra*, is, therefore, not applicable to the question under consideration.

VI. With respect to the Federal Farm Loan bonds referred to in the findings of fact, the petitioners contend that to include the value of the whole or any part thereof in the gross estate for purposes of estate tax is to subject to taxation instrumentalities of the Government which are exempted from such taxation by provisions of the statute authorizing their issue. This contention is based primarily on the provisions of section 26 of the Federal Farm Loan Act approved July 17, 1916, ch. 245 (39 Stat. 360) which reads in part as follows:

First mortgages executed to Federal land banks, or to joint stock land banks, and farm loan bonds issued under the provisions of this Act, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal and local taxation.

Section 302 (a) of the Revenue Act of 1926 provides in substance that to the extent of his interest therein at the time of his death, the value of all the decedent's property, real and personal, tangible and intangible, wherever situated, shall be included in his gross estate. It is, of course, apparent that Farm Loan bonds are within the classification of property contained in the section. It is urged, however, that the phraseology of section 26 of the Farm Loan Act above quoted discloses that it was the intention of Congress to exempt the principal of the bonds issued in accordance with the provisions of the act, together with the income therefrom, from all forms of taxation, including taxation under the estate tax law. In this connection it should be observed that the Federal estate tax law was not approved until September 8, 1916, and therefore it can not be said to have been necessarily within the contemplation of the Congress at the date of the enactment of the Federal Farm Loan Act on July 17, 1916. It is our opinion, however, that the inclusion of the value of such bonds in the gross estate of the decedent for the purpose of determining the amount of tax imposed on the transfer of the net estate is not interdicted by the quoted provisions of the Federal Farm Loan Act.

The nature of the estate tax imposed by the revenue acts, beginning with the Revenue Act approved September 8, 1916, is well settled. It is not a tax on property. It is an excise, the amount of which is measured by the value of the property transferred. *Chase Nat. Bank* v. *United States, supra; Heiner* v. *Donnan, supra.*

Questions closely akin to the one here involved were discussed by the Supreme Court in *Plummer* v. *Coler*, 178 U.S. 115, where the fundamental question was the constitutionality of the inheritance tax law of the State of New York when applied to a legacy which consisted of bonds of the United States containing a clause exempting them from state and Federal taxation. The Supreme Court upheld the validity of the state law, holding that " a State may lawfully measure or fix the amount of the tax by referring to the value of the property passing and that the incidental fact that such property is composed, in whole or in part, of Federal securities does not invalidate the tax or the law under which it was imposed." The language just quoted with reference to *Plummer* v. *Coler, supra*, is an excerpt from *Murdock* v. *Ward*, 178 U.S. 139; 44 L. ed. 1009. In the latter case the Court had under consideration the same statute considered in *Knowlton* v. *Moore, supra*, namely, the War Revenue Act of June 1898, when applied to United States Government bonds issued under statutes providing that neither principal nor interest should be taxed. In *Murdock* v. *Ward,* the Court also said : " Without repeating the discussion in *Plummer* v. *Coler,* and following the

conclusion there reached, we are unable to distinguish that case from the present one." Nor can we distinguish the *Plummer* case, on principle, from the issue now before us. If a state, by an inheritance tax law, can validly impose a tax measured by the amount or value of a legacy, even if the legacy includes tax-exempt United States bonds, the reasoning justifying such a conclusion must, in our opinion, when applied to the present issue lead to the similar conclusion that the United States may impose a death tax measured by the value of Farm Loan bonds although the principal and interest of such bonds are exempted by statute from Federal, state, and local taxation.

The petitioners urge, however, that the decision of the Supreme Court in *First Nat. Bank of Boston* v. *State of Maine*, 284 U.S. 312, recognizes that the estate tax, while not a direct tax, is in substance a tax on property and that, therefore, the value of no part of the Farm Loan bonds may be included in the decedent's gross estate for estate tax purposes. The question in that case, as stated by Mr. Justice Sutherland, is "whether the State of Maine has power under the Fourteenth Amendment to impose a tax upon the transfer by death of shares of stock in a Maine corporation, forming part of the estate of a decedent, who, at the time of his death, was domiciled in the Commonwealth of Massachusetts." In its decision of the question the Supreme Court applied the rule *mobilia sequunter personam* and held that the situs of intangibles is at the domicile of a decedent for the purpose of state taxation of their transfer by death. We have heretofore considered the effect of this and similar decisions of the Supreme Court upon the power of Congress to tax. In *Estate of John Joseph Garvan*, 25 B.T.A. 612, we held that *First Nat. Bank of Boston* v. *State of Maine* and similar decisions " are not controlling when the power of Congress to tax is considered." Nor, in our opinion, is there anything in the decision in the *First Nat. Bank of Boston* case modifying the rule that in Federal taxation of transfers by death, " the thing taxed is the transmission of property from the dead to the living." *Knowlton* v. *Moore, supra; Murdock* v. *Ward, supra; Chase Nat. Bank* v. *United States, supra; Heiner* v. *Donnan, supra.*

The controlling statute has definitely set forth what property is to be included in a decedent's gross estate for the determination of the amount of tax to be imposed on the transfer of the net estate and it is our opinion that the value of the Farm Loan bonds in question may not be excluded from the value of the gross estate.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SEAWELL, dissenting: Having reference to part III in the prevailing opinion, I do not agree, under the circumstances here present, that the property embraced in the trust should be valued for estate tax purposes, as of the date of decedent's death; or, if it is required by the statute to be so valued, that the statute is not unconstitutional.

The statute in reference to estate taxes, here applicable, is section 302 of the Revenue Act of 1926, which provides:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *.

This obviously refers to property of the decedent owned by him at the time of his death, and is not sufficient to include property theretofore conveyed away and not then owned by him. This is shown further by subsection (a) of this section, 302, which provides immediately after the language above quoted:

(a) To the extent of the interest therein of the decedent at the time of his death.

It is significant that not only subsection (a) but also subsection (b) repeats the phrase theretofore used in the section, to wit: " at the time of his death," and that the next succeeding subsection, (c), does not use the phrase. It is subsection (c), in which the phrase " at the time of his death " is not used, that is controlling in this proceeding, and its pertinent language for the case at bar is as follows:

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of * * * death. * * *

The transfer being by trust in this case and having been determined to have been made in contemplation of death, we come to apply the cited portions of the statute to the following portions of the findings of fact:

On June 1, 1926, the date of the execution of the transfer to Cora B. Igleheart, as trustee, the total value of the property transferred to her was $498,599.88 and the value of the property held under the trust instrument at the date of the decedent's death was $606,974.88, which latter amount was included by the respondent in the gross estate.

The question presented is how and by what yardstick of time should we measure and fix " the extent " of the " interest " in the property transferred on June 1, 1926, to the trustee, for its inclusion in the gross estate of the decedent. The petitioner, answering the question, says by using the value of the property transferred at the date of the transfer; the respondent says by using the value of the property transferred at the time of the death of the transferor. The

statute does not require that because the transfer is of a testamentary nature it should be measured as if under a testament.

On June 1, 1926, the extent of the interest of the transferor in the property was all of it, including the right to convey it even in contemplation of death. A conveyance made in contemplation of death is not void or voidable for that reason. The extent of the interest of the transferor in the property after June 1, 1926, when he conveyed it to the trust, including the time of his death, was nothing. How the difference of $108,375 was added to the trust fund after the transfer made by decedent and before decedent's death, whether by the efforts and management of the trust by the trustee, contributions by other friends of the beneficiaries, or by the general rise in the market values of the trust properties, or otherwise, is not shown in the evidence and the findings of fact. The only thing we know is that the $108,375 was not transferred by the decedent to the trust and his death was no generating source of any right therein. *Coolidge* v. *Long*, 282 U.S. 582. Shall it be included in the gross estate of the decedent? It seems to me that to measure the transferor's estate at death, for estate tax purposes, by including property which was not then and never had been his property, is arbitrary and capricious beyond that permitted by the statute or the Constitution. *Heiner* v. *Donnan*, 285 U.S. 312. See also *Frew* v. *Bowers*, 12 Fed. (2d) 625.

In the case of *Milliken* v. *United States*, 283 U.S. 15, cited as the controlling authority in the prevailing opinion, decedent therein in contemplation of death, gave property to his children after the effective date of the 1916 Revenue Act and before the effective date of the 1918 Revenue Act, in which latter act the estate tax rate was increased. Decedent died in 1920. The tax was computed on the basis of the value of the gift at the time of the death of decedent and taxed at the rate in the 1918 Act; but there is nothing in the case in the Court of Claims or the Supreme Court to indicate that the value of the gift to the children was greater or less when decedent died than when the gift was made. In the *Milliken* case petitioner was contending that the 1918 Act, enacted after the gift to the children, was retroactive, and that he should be taxed at the lesser rate provided in the 1916 Act, if at all. There was no dispute as to the value of the property and no contention that its value at the time of the death of the decedent was different from its value at the time the gift was made. Whatever may have been said in the two opinions filed in the Court of Claims or in the opinion of Mr. Justice Stone in the Supreme Court, if anything, in reference to the *time* when the value of the gift should be computed, was *obiter dictum*, for that question, present here, was not present in the

914

*Milliken* case. There are found in the books judicial expressions anticipatory of this question, but no case cited in the majority opinion or called to the attention of the Board presents this precise question for review.