J. BERTRAM LIPPINCOTT AND BERTHA LIPPINCOTT COLES, EXECUTORS OF THE ESTATE OF WALTER LIPPINCOTT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49233. Promulgated February 11, 1933.

*Jesse I. Miller, Esq.*, for the petitioners.
*L. S. Pendleton, Esq.*, for the respondent.

738

## OPINION.

MATTHEWS: The underlying and controlling question in this case is whether the transfers by the decedent, upon which the disputed deficiency in tax was computed, were in fact made in contemplation of death. The pertinent section of the statute, section 302 (c) of the Revenue Act of 1926, is quoted in the margin.[1] It will be seen that section 302 (c) contains two provisions. Under the first provision the value of transfers made *at any time* in contemplation of death, except by a bona fide sale, is required to be included in the decedent's

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. \* \* \*

gross estate. The second provision, which raises a conclusive presumption that gifts made within two years prior to the decedent's death were made in contemplation of death, has been held by the Supreme Court of the United States to be unconstitutional (*Heiner* v. *Donnan*, 285 U. S. 312.)

At the hearing of this proceeding it was strongly urged on behalf of the petitioners that, inasmuch as there was deducted in the instant case the sum of $5,000 as an exemption, the respondent was relying upon the conclusive presumption provision of section 302 (c) of the Revenue Act of 1926, and that since the Supreme Court declared that provision to be unconstitutional in the *Donnan* case, *supra*, the burden was on the respondent to show that the transfers involved herein were actually made in contemplation of death. We see no merit in this argument. Since the pronouncement of the Supreme Court that the conclusive presumption provision of that section is unconstitutional, the petitioner has the right to introduce evidence to show that the transfers, whenever made, were not in fact made in contemplation of death. This is not equivalent to relieving the petitioner of the burden of proving the respondent's determination to be erroneous.

In the instant case the respondent has not admitted that the transfers were not actually made in contemplation of death. The record does not indicate that the respondent, in including in the gross estate the value, in excess of $5,000, of the property transferred to the decedent's daughter, was relying solely upon the conclusive presumption raised by section 302 (c). The burden of proof of the facts relative to the transfers has not been shifted from petitioners to the respondent. Cf. *Estate of John Joseph Garvan*, 25 B. T. A. 612.

We have carefully considered the evidence introduced on behalf of petitioners and have reached the conclusion that the transfers to the decedent's daughter were in fact made in contemplation of death.

It is urged on behalf of petitioners that the decedent was contemplating a second marriage and that he deeded his real estate to his daughter so that he could remarry upon his own terms. We do not consider the evidence sufficient to support the contention that the conveyances were made in contemplation of marriage. Had the property been conveyed to the woman he desired to marry the case would be stronger in favor of the petitioners' claim that decedent was not thinking of his approaching decease. But let us briefly consider the circumstances surrounding the gift to his daughter of property valued at approximately a million dollars.

At the time of executing the deeds in question decedent was seventy-seven years of age and had been in a wheel chair for nearly four years. Since being stricken with hemiplegia in 1922 he had been unable to walk without assistance. He had four trained nurses to wait on him. He was in very poor physical condition and although he remained cheerful he must have known that his days were numbered. His daughter was his only child and it was fitting that he should have conveyed to her the property which she would have inherited upon his death. She was the natural object of his bounty and there is nothing unusual in his having made these transfers prior to his death. She agreed that during the remainder of his life the decedent should have the use of his estate "Alscot", where he had resided for thirty-five years. We consider that the transfers were testamentary in character, under all the circumstances of the case. It is not controlling whether the decedent apprehended that death was near at hand. Decedent did actually die within less than ten months after making the transfers, but our conclusion would be unchanged if he had lived for a considerably longer period of time. As was said by the Supreme Court of the United States in the case of *United States* v. *Wells*, 283 U. S. 102, 117: " Death must be ' contemplated ', that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition." In this case the dominant motive, without which the transfers would not have been made, was the decedent's desire that his daughter should come into possession of the real estate which he deeded to her. See *Anneke* v. *Willcuts*, 1 Fed. Supp. 662. This is not inconsistent with the hope on his part, however faint, that he might sufficiently regain his health to contract a second marriage.

There remains to consider whether the respondent erred in his valuation of certain property which was included in the gross estate.

With respect to the real estate located at the northeast corner of Sixth and Locust Streets in the City of Philadelphia, we are of the opinion that the decedent's undivided one-third interest therein had a value on the date of the decedent's death of $48,746.66. In reaching this determination we have taken into consideration the amount of rental received, the size of the lot, its corner location and the prices at which the adjoining lots sold in 1928. We do not consider that the amount for which the property was assessed for purposes of local taxation is necessarily a reliable criterion to be used in estimating its fair market value.

We are of the further opinion that the property known as "Alscot", Bryn Mawr, Pennsylvania, had a value of $243,000 on the date of the decedent's death. This is the amount at which it was valued by an expert real estate appraiser who was familiar with the property and

who testified that it was worth $12,000 an acre, including improvements. He based his opinion on the comparative prices of sales made of similar properties and he pointed out that the property would likely have to be divided into lots and developed before it could be disposed of to the general public; that there is practically no sale for an estate of that size at a figure approximating its cost to the owner, but frequently an estate can be subdivided and improved and then placed on the market at prices which will insure a fair return on the investment. His testimony is the only evidence contained in the record which has any bearing on the question of the valuation of this real estate and we consider that it is entitled to considerable weight.

No evidence having been introduced with respect to the value of the shares of stock of J. B. Lippincott Company which decedent owned at the time of his death, the respondent's valuation of $100 per share, or $50,600, must be sustained.

In recomputing the deficiency there should be included in the gross estate the full amount of the value at the date of decedent's death of the real estate conveyed to the decedent's daughter in contemplation of death. The elimination of the exemption of $5,000 will not increase the deficiency determined by the respondent since we have reduced the respondent's valuation of two of the parcels of real estate.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*