# United States Tax Court

T.C. Memo. 2025-134

ESTATE OF GEORGIA M. SPENLINHAUER, DECEASED, ROBERT
J. SPENLINHAUER, EXECUTOR,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

ROBERT J. SPENLINHAUER, TRANSFEREE OF THE ESTATE OF
GEORGIA M. SPENLINHAUER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 4998-18, 11286-18.              Filed December 30, 2025.

————

Robert J. Spenlinhauer, pro se.

*Carina J. Campobasso*, *Nina P. Ching*, *Molly H. Donohue*, and *Daniel P. Masciello*, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, *Judge*: In these consolidated cases the Internal Revenue Service (IRS or respondent) determined that (1) the Estate of Georgia M. Spenlinhauer (estate) is liable for an estate tax deficiency of

**[\*2]** \$3,984,344, an addition to tax pursuant to section 6651(a)(1)[1] of \$996,086, and an accuracy-related penalty pursuant to section 6662(a) and (b)(5) of \$524,520 and (2) Robert J. Spenlinhauer (petitioner) is liable for the estate tax deficiency, the addition to tax, and the accuracy-related penalty as a transferee pursuant to section 6901.

After concessions by the parties,[2] the issues remaining for decision are the following:

(1) whether the estate timely elected to use an alternate valuation date pursuant to section 2032 to value decedent's gross estate;

(2) whether the estate may exclude \$200,000 from the value of property located at 90 and 90-A Industrial Park Road, Hingham, Massachusetts (Hingham Property), for a qualified conservation easement contribution;

(3) whether the fair market value of the Hingham Property was \$5,815,000 on the date of decedent's death, rather than \$3.9 million as reported on the estate tax return;

(4) whether the fair market value of decedent's 1% interest in Spencer Press, Inc. (Spencer Press), was \$377,000, rather than \$150,000 as reported on the estate tax return;

(5) whether the value of decedent's gross estate should include the value of property located at 172 Old Farm Road, Milton, Massachusetts (Milton Property), and a promissory note issued by Parsonsfield Group, LLC (Parsonsfield);

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts are rounded to the nearest dollar.

[2] By way of a Stipulation of Facts and a Partial Stipulation of Settled Issues, the parties agree that (1) \$1,500 in cash from decedent's personal bank account and \$13,000 in decedent's jewelry and personal effects are includible in decedent's gross estate; (2) the estate is not entitled to a charitable contribution deduction totaling \$200,000 for specific bequests to each of decedent's grandchildren; and (3) the estate is not liable for the accuracy-related penalty (which flows through to the transferee liability asserted against petitioner). Additionally, on brief respondent conceded that the amount paid with respect to valid expenses is \$37,700 based on the amount of expenses reported on the estate tax return less the amount that the IRS disallowed.

**[\*3]**  (6) whether the estate is liable for tax on gifts totaling $1.08 million, rather than $104,000 as reported on the estate tax return;

(7) whether the estate is entitled to deductions of $5,000 for executor's commissions, $75,000 for attorney's fees, $515,329 for litigation fees to Peabody & Arnold, and $300,000 for an unsecured letter of credit;

(8) whether the estate is liable for the addition to tax pursuant to section 6651(a)(1) for failing to timely file an estate tax return; and

(9) whether petitioner is liable as a transferee for the estate tax deficiency and the addition to tax.

FINDINGS OF FACT

Some of the facts are stipulated and so found.  The Stipulation of Facts and the attached Exhibits are incorporated herein by this reference.  Petitioner resided in Maine when he timely filed his Petitions with the Court.  These cases were consolidated for purposes of trial, briefing, and opinion pursuant to Rule 141(a).

I.    *Background of the Estate*

On February 4, 2005, petitioner's mother, Georgia M. Spenlinhauer (decedent), died at the age of 95.  In her will she appointed petitioner to serve as the executor and bequeathed to him the residue of the estate.  After distributing specific bequests and paying expenses, petitioner transferred the remaining assets to himself as the residual beneficiary under the will, including: $535,000 in cash from the proceeds of decedent's life insurance policy, $377,000 in cash from the conversion of decedent's 1% interest in Spencer Press, $1,500 in cash from decedent's personal bank account, $13,000 in decedent's jewelry and personal effects, and the Hingham Property.  Except for the Hingham Property, petitioner reported the assets to the Massachusetts Probate and Family Court, Norfolk Division (Probate Court).  The estate had no remaining assets after the transfer, and the Probate Court closed the case on March 28, 2009.

Petitioner requested and received an extension to May 4, 2006, to file the estate tax return.  He sought advice from his estate planning attorney, Robert Galvin, and his accountant, David Erb, and decided not to file the return.  Mr. Erb cautioned petitioner that he did not have

**[\*4]** expertise in estate tax and did not file estate tax returns as part of his practice.

On December 16, 2013, petitioner filed for bankruptcy protection in the U.S. Bankruptcy Court for the District of Massachusetts. The IRS contacted petitioner to initiate an examination regarding the estate after it learned through the bankruptcy proceedings that petitioner had not filed a tax return with respect to the estate.

On February 8, 2017, after being contacted by the IRS, petitioner, acting as executor for the estate, filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, reporting a "Total gross estate less exclusion" of $4,385,251 (electing an alternate valuation)[3] and "total allowable deductions" of $3,338,029. Petitioner reported that the "Total gross estate less exclusion" consisted of the following assets:

| Asset | Value at Date of Decedent's Death | Alternate Valuation Date | Alternate Value |
|---|---|---|---|
| GMS Realty Trust (i.e., the Hingham Property) | $4,000,000 | 2/5/2005 | $3,900,000[4] |
| Decedent's 1% interest in Spencer Press | 377,000[5] | 2007 | 150,000 |
| Milton Property Mortgage | 225,000 | Date of Death | -0- |

[3] The exclusion is for a qualified conservation easement contribution and is also an election. *See* § 2031(c)(1), (6).

[4] In Part 5—Recapitulation of the return, petitioner reported the alternate value of Schedule A—Real Estate as $3.9 million; however, on Schedule A he reported the alternate value as $3.8 million. At trial petitioner testified (and contends on brief) that the value is $3.9 million.

[5] In Part 5—Recapitulation of the return, petitioner reported the date of death value of Schedule B—Stock and Bonds as $377,000 and the alternate value as $150,000; however, on Schedule B he reported the date of death and alternate values as just the opposite—$150,000 and $377,000, respectively.

| [*5] | | | |
|---|---|---|---|
| JNF Life Insurance Company Policy | 535,251[6] | N/A (Not Applicable) | 535,251 |
| Qualified Conservation Easement Exclusion relating to the Hingham Property | 200,000 | — | 200,000 |

Petitioner reported that the "total allowable deductions" consisted of the following expenses or items:

| Expense | Amount |
|---|---|
| Funeral Expenses | $23,700 |
| Executor's Commissions | 5,000 |
| Attorney's Fees | 75,000 |
| Accountant's Fees | 2,500 |
| Peabody & Arnold Litigation Fees | 515,329 |
| Other Miscellaneous Fees | 11,500 |
| Debts of the Decedent | 1,000[7] |
| TD Bank, N.A. Secured Mortgage and TD Bank, N.A. Unsecured Letter of Credit | 2,500,000[8] |
| Charitable Gifts and Bequests | 204,000 |

[6] In Part 5—Recapitulation of the return, petitioner reported the date of death value of Schedule D—Insurance on the Decedent's Life as $535,251; however, on Schedule D he reported the date of death value as $535,251.54, thus reflecting in Part 5—Recapitulation that with respect to the value of the insurance policy he rounded down rather than rounded up to the nearest dollar.

[7] In Part 5—Recapitulation of the return, petitioner reported Schedule K—Debts of the Decedent as $1,000; however, on Schedule K he reported the item as zero.

[8] In Part 5—Recapitulation of the return, petitioner reported Schedule K—Mortgages and Liens as $2.5 million ($2.2 million for the secured mortgage and $300,000 for the unsecured letter of credit); however, on Schedule K he reported the item as zero and also incorrectly reported the item on Schedule C of the return.

**[*6]** A.    *Hingham Property*

Decedent owned the Hingham Property through her revocable trust, GMS Realty Trust.  The trust terminated upon her death, and the property was transferred through the estate to petitioner as the residual beneficiary under decedent's will.  At the time of decedent's death the property was encumbered by a mortgage held by TD Bank, N.A., with a principal amount of $2.2 million.

The Hingham Property was transferred to petitioner on or about July 20, 2006.  Before the transfer, petitioner obtained an appraisal of the property which valued it as of May 16, 2006, at $9.48 million without a tenant or $9.65 million with a tenant.  Petitioner did not provide this appraisal to his estate planning attorney, Mr. Galvin.

As indicated *supra* p. 4, on the estate tax return petitioner reported the value of the Hingham Property on the date of decedent's death as $4 million.  At trial, respondent presented the testimony of his real estate appraisal expert, Michael Hart.  Mr. Hart inspected the property, examined public records, and concluded on the basis of comparable property sales and the income produced by the property that its value was $5,815,000 on the date of decedent's death.  The Hingham Property was eventually sold in foreclosure in 2015.

B.    *1% Interest in Spencer Press*

Decedent owned a 1% interest in her family's closely held corporation, Spencer Press, at the time of her death.  In December 2004 a competitor of Spencer Press made an offer to purchase the company which would have resulted in petitioner's receiving an estimated $350,000 as his pro rata share of the purchase price through the estate.  Petitioner, acting as executor for the estate, informed the other shareholders, his two brothers, that he would not accept the amount and demanded $3 million for decedent's interest.  Petitioner also rejected their subsequent offers of $500,000 and $750,000 to purchase decedent's interest.  The other shareholders decided to move forward with the sale through a cash-out merger and informed petitioner that the estate's share would be $375,000.  Petitioner responded by initiating litigation against the other shareholders disputing the sale of Spencer Press.

In *Spenlinhauer v. Spencer Press, Inc.*, 959 N.E.2d 436 (Mass. App. Ct. 2011), the Appeals Court of Massachusetts affirmed the decision of the lower court to appraise decedent's interest as a percentage of the net sale price in proportion to her interest, or

[*7] $361,540.   As indicated *supra* p. 5, on the estate tax return petitioner claimed a deduction of $515,329 for litigation fees to the law firm Peabody & Arnold for representing him in the matter.  At trial of the instant cases petitioner produced invoices that showed he had made payments totaling $334,700 for Peaboby & Arnold's services between 2005 and 2010.

As indicated *supra* pp. 3–4, petitioner reported the value of decedent's 1% interest in Spencer Press to the Probate Court as $377,000, and on the estate tax return he reported the value of decedent's interest on the date of her death as $377,000 and an alternate value of $150,000.

C.     *Milton Property*

Decedent purchased the Milton Property in 1988 to use as her personal residence.  On July 22, 1998, she conveyed the property (via a quitclaim deed) to petitioner in exchange for a 30-year promissory note with a stated principal amount of $460,000 and an interest rate of 7%. Decedent and petitioner understood the purpose of the transaction was in furtherance of decedent's objective to dispose of all of her assets before her death.  After the conveyance, decedent continued to use the property as her personal residence until her death.

On July 22, 2004, decedent (who was 95 years old at the time) and petitioner amended the promissory note to increase the interest rate to 9%, amortize the principal over 30 years, and add a provision that provided that upon decedent's death the outstanding balance would be canceled.

At trial petitioner asserted that he made regular payments on the note, though he could not recall the amounts paid or the exact balance of the note at the time of decedent's death.  Petitioner estimated that the payments were around $1,000 per month paid quarterly, though he presented no evidence to substantiate that any payments were made. As indicated *supra* p. 4, on the estate tax return petitioner reported an estimated balance of $225,000 on the promissory note.

Additionally at trial, respondent presented the testimony of his expert in the valuation of promissory notes, David Levenson, and the testimony of Mr. Hart.  Mr. Levenson concluded that the fair market value of the promissory note on the Milton Property on the date of its execution would have been $164,581.  This conclusion was based on, among other factors and assumptions, the inclusion of the self-canceling

[*8] provision and the assumption that petitioner made payments pursuant to the terms of the original note (i.e., $3,080 per month).  Mr. Hart concluded that, on the basis of sales of comparable properties, the value of the Milton Property was $510,000 on the date of the transfer and $850,000 on the date of decedent's death.

### D.   *Parsonsfield Note*

Petitioner formed Parsonsfield to purchase property in Parsonsfield, Maine, from his bankruptcy estate and to prevent any of his creditors from reaching the property to satisfy his debts.  To finance the purchase, Parsonsfield borrowed the funds from decedent and provided a promissory note, dated January 5, 1996, with a principal amount of $158,500.  At trial petitioner asserted that either he or Parsonsfield made payments on the note and satisfied the debt; however, petitioner provided no documentary evidence to substantiate that payments were made.  Petitioner did not include the note in the list of the estate's assets reported to the Probate Court or on the estate tax return.

### E.   *Other Taxable Gifts*

As relevant here, during her life decedent reported to the IRS taxable gifts of $95,000 for 1986 and $985,000 for 1998; however, on the estate tax return petitioner reported "Adjusted taxable gifts" of $104,000.

## II.   *Notices of Deficiency and Liability*

After examination of the estate tax return, the IRS sent petitioner, as the estate's personal representative, a Notice of Deficiency dated January 25, 2018.  In the Notice of Deficiency, the IRS, in pertinent part (1) disallowed the elections for a qualified conservation easement exclusion and an alternate valuation for the Hingham Property; (2) adjusted the values reported for the Hingham Property, the 1% interest in Spencer Press, and the taxable gifts; (3) included in the gross estate the value of the Milton Property and the value of the note from Parsonsfield; (4) disallowed the deductions for executor's commissions, attorney's fees, the Peabody & Arnold litigation fees, and the TD Bank, N.A. unsecured letter of credit; and (5) determined a section 6651(a)(1) addition to tax for failure to timely file the estate tax return.

**[\*9]** On March 26, 2018, the IRS made a jeopardy assessment against the estate pursuant to section 6861. The IRS then notified petitioner, in a Notice of Liability dated May 8, 2018, that he was liable for the estate's liabilities as a transferee.

## OPINION

### I. *Burden of Proof*

Generally, the Commissioner's determinations set forth in a Notice of Deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Section 7491(a) provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to the taxpayer's tax liability if the taxpayer introduces credible evidence with respect to the issue and meets certain other conditions. *See* § 7491(a)(2). Petitioner does not allege that the burden of proof should shift to respondent pursuant to section 7491(a). Therefore, the burden remains with petitioner to prove that the determinations are erroneous.

The Commissioner bears the burden of production with respect to the addition to tax pursuant to section 6651, *see* § 7491(c), but the taxpayer bears the burden of proving that the Commissioner's determination with respect to the addition to tax should not be sustained, *see Wheeler v. Commissioner*, 127 T.C. 200, 207–08 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008).

The Commissioner bears the burden of proof as to the taxpayer's transferee liability, but not as to whether the taxpayer is liable for the tax. § 6902(a); Rule 142(d).

### II. *Decedent's Taxable Estate*

Section 2001 imposes a tax on the transfer of a taxable estate. The taxable estate is the value of the gross estate less applicable deductions. § 2051. The gross estate includes the value of any property that a decedent had an interest in at the time of her death. § 2033.

#### A. *The Time of Death as Valuation Date*

Section 2031(a) provides that the gross estate is generally valued at the time of the decedent's death. Section 2032 allows the executor of an estate to elect an alternate valuation date. The executor must make

**[\*10]** the election on the estate tax return no later than a year after the time prescribed by law (including extensions) for filing. § 2032(d).

Here, the estate tax return was due on May 4, 2006. Petitioner attempted to make the election on the return filed on February 8, 2017. Because petitioner failed to file the return within a year of the due date (including extensions) for filing, no election may be made and the gross estate must be valued at the time of decedent's death. Accordingly, we sustain the IRS's disallowance of this late election.

### B. *The Hingham Property*

#### 1. *Qualified Conservation Easement Exclusion*

An executor of an estate with land subject to an easement may elect to exclude the applicable percentage of the value of the land from the gross estate pursuant to section 2031(c) if the executor makes the election on the estate's tax return on or before the due date (including extensions) for filing. § 2031(c)(1), (6). Because petitioner failed to file the estate tax return before the due date as extended, he is barred from making this election. Accordingly, we sustain the IRS's disallowance of this late election.[9]

#### 2. *Value of Property*

The value of property included in the gross estate is the property's fair market value, or the price at which an exchange would occur between a willing buyer and willing seller, neither under any compulsion to buy or sell, and both having reasonable knowledge of the relevant facts. Treas. Reg. § 20.2031-1(b). We have long recognized that the value at which property is assessed for local tax purposes may not be a reliable indicator of fair market value. *See Lippincott v. Commissioner*, 27 B.T.A. 735, 740 (1933) ("We do not consider that the amount for which the property was assessed for purposes of local taxation is necessarily a reliable criterion to be used in estimating its

---

[9] Alternatively, we sustain the IRS's disallowance of the election on the grounds that (1) as reported on the estate tax return, the Hingham Property was encumbered by a mortgage held by TD Bank, N.A., *see* § 2031(c)(4) (providing that the section 2031(c) election is not allowed with respect to land that is debt-financed property), and (2) petitioner made no showing, as required by section 2031(c)(8), that a conservation easement was in fact placed on the Hingham Property or that, if such a conservation easement does encumber the property, it is a qualified conservation contribution within the meaning of section 170(h)(1) encumbering a qualified real property interest within the meaning of section 170(h)(2).

[*11] fair market value."), *rev'd on other grounds*, 72 F.2d 788 (3d Cir. 1934). The regulations provide that property "shall not be returned at the value at which it is assessed for local tax purposes unless that value represents the fair market value as of the applicable valuation date." Treas. Reg. § 20.2031-1(b).

Petitioner contends that the value of the Hingham Property in 2005 was $3.9 million. In support of his position petitioner produced at trial a June 19, 2018, email from the Assessing Technician for the Town of Hingham, Maureen Carlson, that stated that the Hingham Property's assessed value for fiscal year 2005 was $3,821,400. Petitioner did not present any evidence to demonstrate that the assessment represented the fair market value of the property at decedent's death. *See id.* The only appraisal petitioner obtained around the time of decedent's death (the appraisal was as of May 2006, 15 months after decedent's death) valued the property at more than double the amount of the assessment (the appraisal value was $9.48 million without a tenant or $9.65 million with a tenant).

Respondent's real estate appraisal expert, Mr. Hart, valued the Hingham Property at $5,815,000 at the time of decedent's death. Mr. Hart based his conclusion on sales of comparable properties and the income produced by the property. We find Mr. Hart's testimony in this regard credible and thus the value of the Hingham Property as of the date of decedent's death is $5,815,000. Accordingly, we sustain the IRS's inclusion of the Hingham Property in decedent's gross estate to the extent of this value of the property.

C.      *Value of Decedent's 1% Interest in Spencer Press*

Treasury Regulation § 20.2031-2(a) provides that the value of stock is the fair market value per share on the applicable valuation date. If there is a market for the stock, the value may be determined by calculating the mean between the highest and lowest quoted selling prices on or within a reasonable period before and after the valuation date. *Id.* para. (b).

Petitioner contends that decedent's 1% interest in Spencer Press had little or no value at the time of her death. He reported the value of the shares on that date to the Probate Court and on the estate tax return as $377,000, but he also reported on the estate tax return an alternate value of the shares as $150,000.

[*12] In December 2004, before decedent's death, Spencer Press received an offer to purchase its shares, which would have resulted in an estimated pro rata share of $350,000 for decedent's interest. At the time petitioner believed this offer was too low, and he instead countered with a demand of $3 million. He also rejected offers from the other shareholders of $500,000 and $750,000. When the other shareholders decided to move forward with the sale through a cash-out merger and petitioner was informed that the estate's share would be $375,000, he instituted litigation against the other shareholders disputing the sale, allegedly spending over $500,000 in legal fees for the services of Peabody & Arnold to represent him in the matter. Petitioner's actions unmistakably show that even he did not believe at the time that the shares were worth as little as he now contends. After Spencer Press was sold, petitioner received $377,000 for decedent's interest. Petitioner has not presented any evidence indicating that the shares were worth less than what they ultimately sold for. Accordingly, we sustain the IRS's adjustment of the value of decedent's 1% interest in Spencer Press.

### D. *Inclusion of the Milton Property in the Gross Estate*

Section 2036(a)(1) provides that, except in the case of a bona fide sale for an adequate and full consideration in money or money's worth, the value of the gross estate shall include any property of which the decedent has made a transfer under which she has retained an interest for her life or any period not ascertainable without reference to her death or for any period which does not in fact end before her death the possession or enjoyment of, or the right to the income from, such transferred property. In other words, the value of transferred property is included in the gross estate if the decedent makes an inter vivos transfer for less than adequate and full consideration and retains an interest or right in the property. *Estate of Bongard v. Commissioner*, 124 T.C. 95, 112 (2005). Property is included in the decedent's gross estate if she retained actual possession or enjoyment of it even if she may not have had any enforceable right to do so. *Estate of Rapelje v. Commissioner*, 73 T.C. 82, 86 (1979); *Estate of Honigman v. Commissioner*, 66 T.C. 1080, 1082 (1976). The decedent retains possession and enjoyment of the property when there is an express or implied understanding to that effect among the parties at the time of transfer, which may be inferred when intrafamily arrangements are involved. *Estate of Rapelje*, 73 T.C. at 86. Here, there is no dispute that decedent made an inter vivos transfer of the Milton Property to petitioner and continued to retain possession and enjoyment of the

**[\*13]** property for the remainder of her life. The issue is whether petitioner paid adequate and full consideration for the property.

Petitioner contends that the IRS improperly included the Milton Property in decedent's gross estate and that it was transferred to him in a bona fide sale in which he provided a promissory note in exchange for the property. The existence of a note or other evidence of a legally enforceable debt is not conclusive evidence of bona fide debt, and it must be clearly shown that the parties intended to create a debtor-creditor relationship. *Estate of Van Anda v. Commissioner*, 12 T.C. 1158, 1162 (1949), *aff'd per curiam*, 192 F.2d 391 (2d Cir. 1951). Respondent's experts testified that the value of the Milton Property around the time of the transfer was $510,000, while the value of the promissory note would have been $164,581 if petitioner had made payments in accordance with the note's terms. Petitioner presented no evidence other than his own testimony to demonstrate any payment was made toward the debt. Petitioner's testimony demonstrated that he was paying far less than what was required by the terms of the note. Petitioner also testified that the purpose of the sale was to make sure decedent did not hold any property in her name when she died. These facts suggest that the parties did not intend to form a debtor-creditor relationship.

The addition of the self-canceling provision provides further support for finding that the parties did not intend to form a debtor-creditor relationship. A few months before her death, the note on the Milton Property was amended to add a provision that the note would be canceled, and the remaining debt would be forgiven, upon decedent's death. Self-canceling installment notes made between family members are presumed to be gifts and not bona fide debt. *Estate of Costanza v. Commissioner*, 320 F.3d 595, 597 (6th Cir. 2003) (citing *Estate of Labombarde v. Commissioner*, 58 T.C. 745, 755 (1972)), *rev'g* T.C. Memo. 2001-128. Furthermore, the parties could not have reasonably expected the debt would ever be paid in full, given that decedent would have needed to live to the age of 125 for that to happen.

We find that petitioner and decedent never intended to create a debtor-creditor relationship and decedent did not receive adequate and full consideration for the property. Accordingly, we sustain the IRS's inclusion of the Milton Property in decedent's gross estate to the extent of the value of the property as determined by respondent's expert, Mr. Hart (i.e., $850,000).

**[\*14]** E.  *Inclusion of the Parsonsfield Note in the Gross Estate*

Treasury Regulation § 20.2031-4 provides that the fair market value of notes is the amount of unpaid principal, plus interest accrued to the date of death, unless the executor establishes that the value is lower or that the notes are worthless.  Petitioner contends that he or Parsonsfield satisfied the debt on the Parsonsfield Note held by decedent.  But petitioner failed to produce any evidence beyond his own self-serving testimony to demonstrate that payments were made or that the note was discharged.  *See Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986) (stating that we are not bound to accept a taxpayer's self-serving testimony).  Accordingly, we sustain the IRS's inclusion of the Parsonsfield Note in decedent's gross estate.

F.  *Decedent's Taxable Gifts*

The amount of adjusted taxable gifts made by a decedent after December 31, 1976, must be included in the computation of the estate tax.  § 2001(b)(1)(B).  Here, decedent made taxable gifts totaling $1.08 million and reported those gifts on Forms 706.  Petitioner does not dispute whether these gifts were made or should be included in the computation of the estate's tax.  Accordingly, we sustain the IRS's adjustment of taxable gifts.

G.  *Estate Expenses*

Section 2053(a) allows a deduction from the gross estate for funeral expenses, administration expenses, claims against the estate, and unpaid mortgages or indebtedness on property, the value of which is included in the gross estate.  Tax deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).  This burden requires the taxpayer to demonstrate that the claimed deductions are allowable pursuant to some statutory provision and to substantiate the expenses giving rise to the claimed deductions by maintaining and producing adequate records that enable the Commissioner to determine the taxpayer's correct liability.  § 6001; *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001).

1.  *Executor's Commissions*

Treasury Regulation § 20.2053-3(b) allows for the deduction of executor's commissions paid or reasonably expected to be paid at the

**[*15]** time of filing the estate tax return. If this amount is not fixed by court decree, the deduction is allowed to the extent the IRS is reasonably satisfied that the commissions claimed will be paid, the amount is allowable pursuant to the laws of the jurisdiction in which the estate is being administered, and the amount is in accordance with the usually accepted practice of the jurisdiction for estates of similar size and character. *Id.* subpara. (1). Petitioner did not provide any evidence to support a deduction for executor's commissions. Accordingly, we sustain the IRS's disallowance of the claimed deduction for executor's commissions.

2. *Attorney's Fees and Peabody & Arnold Litigation Fees*

Treasury Regulation § 20.2053-3(a) limits administration expenses to such expenses as are actually and necessarily incurred in the administration of the decedent's estate (i.e., in the collection of assets, payment of debts, and distribution of property to the beneficiaries). Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the beneficiaries, may not be deducted. *Id.*

The executor of the estate may deduct reasonable attorney's fees that have been paid or may reasonably be expected to be paid. *Id.* para. (c)(1). Attorney's fees incurred by beneficiaries incident to litigation as to their respective interests are not deductible if the litigation is not essential to the proper settlement of the estate. *Id.* subpara. (3).

In the estate tax return petitioner reported $75,000 in attorney's fees and $515,329 in litigation fees to Peabody & Arnold. Petitioner failed to provide any substantiation for the reported $75,000. While petitioner provided some evidence that he incurred litigation fees from Peabody & Arnold and paid a portion of those fees, the litigation was not necessary for the proper settlement of the estate. The price at which decedent's 1% interest in Spencer Press would eventually sell could have only benefited petitioner. Accordingly, we sustain the IRS's disallowance of the claimed deduction for both the attorney's fees and the Peabody & Arnold litigation fees.

3. *Unsecured Letter of Credit*

Treasury Regulation §§ 20.2053-1(a)(1)(iv) and 20.2053-7 provide that a deduction is allowed from a decedent's gross estate for any unpaid mortgages upon, or indebtedness in respect of, property included in the

**[\*16]** gross estate. Petitioner contends that the claimed deduction for the $300,000 unsecured letter of credit is proper. Petitioner provided no evidence to support his contention or demonstrate that the letter of credit is related to the Hingham Property. Accordingly, we sustain the IRS's disallowance of the claimed deduction for the unsecured letter of credit.

III.   *Section 6651(a)(1) Addition to Tax*

Section 6651(a)(1) authorizes the imposition of an addition to tax for a taxpayer's failure to file a required tax return on or before the specified filing date, including extensions. The Commissioner bears the burden of production with respect to the addition to tax, but the taxpayer bears the burden of proving that the determination with respect to the addition to tax is incorrect. *See* § 7491(c); *Wheeler*, 127 T.C. at 207–08. The Commissioner satisfies his burden of production by providing sufficient evidence to show that the taxpayer filed the required tax return late. *Higbee*, 116 T.C. at 447. Here, the estate tax return was due by May 4, 2006; however, the return was not filed until February 8, 2017, nearly 11 years after the extended deadline to file. Respondent has met his burden of production with respect to the addition to tax.

Application of the section 6651(a)(1) addition to tax may be avoided if the taxpayer shows that the failure to timely file was due to reasonable cause and not due to willful neglect. Petitioner does not claim nor does the record support a finding that the failure to timely file was due to reasonable cause. Even if petitioner's accountant, Mr. Erb, advised petitioner that no estate tax return was due and petitioner relied on that advice, it was not reasonable because Mr. Erb cautioned petitioner that he did not have expertise in estate tax and did not file estate tax returns as part of his practice. Further, petitioner failed to provide all necessary and accurate information to him (i.e., the 2006 Hingham Property appraisal). *See Neonatology Assocs., P.A. v. Commissioner*, 115 T.C. 43, 98–99 (2000), *aff'd*, 299 F.3d 221 (3d Cir. 2002). Accordingly, we sustain the addition to tax under section 6651(a)(1) against petitioner.

IV.   *Transferee Liability*

Section 6901 provides that the IRS may assess and collect unpaid estate tax from the transferee of a decedent's property, including donees, heirs, devisees, and distibutees. *See* § 6901(a), (h). Section 6901 does

**[\*17]** not independently impose tax liability but provides the procedure through which the IRS may collect from a transferee if a basis exists under applicable state law or equity principles for holding the transferee liable for the transferor's debts. *Commissioner v. Stern*, 357 U.S. 39, 42–45 (1958) (analyzing the predecessor statute); *Frank Sawyer Tr. of May 1992 v. Commissioner*, 712 F.3d 597, 602–03 (1st Cir. 2013), *rev'g* T.C. Memo. 2011-298. Thus, the IRS is placed in "precisely the same position as that of ordinary creditors under state law." *Starnes v. Commissioner*, 680 F.3d 417, 429 (4th Cir. 2012), *aff'g* T.C. Memo. 2011-63. As indicated *supra* p. 9, respondent bears the burden of proof to show that petitioner is liable as a transferee of the transferor's property. *See* § 6902(a); *Schussel v. Werfel*, 758 F.3d 82, 87 (1st Cir. 2014), *aff'g in part, rev'g in part* T.C. Memo. 2013-32.

The applicable state law is the law of the state in which the transfer occurred. *Commissioner v. Stern*, 357 U.S. at 45. Here, because the transfers occurred in Massachusetts, its law applies. Under the Massachusetts Uniform Fraudulent Transfer Act (MUFTA), creditors may seek to recover a debt from a transferee of a debtor in cases where there is actual or constructive fraud. Mass. Gen. Laws ch. 109A, § 8 (1996). Section 6(a) of MUFTA provides:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

A claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 2. A tax deficiency "exists from the date a return is to be filed and . . . arises by operation of law when the return is not filed." *United States v. Hogan*, 861 F.2d 312, 316 (1st Cir. 1988). Thus, whether the exact amount of the estate tax deficiency was known at the time of the transfer does not affect whether the IRS had a claim against the estate.

Respondent contends that petitioner is liable as a transferee because petitioner transferred decedent's residuary estate to himself, rendering the estate insolvent. We agree.

**[\*18]** After distributing specific bequests and paying expenses, petitioner, acting as executor for the estate, transferred the remaining assets to himself in accordance with decedent's will. The estate made the transfer without receiving equivalent value and held no assets after the transfer. A debtor is insolvent if the sum of its debts is greater than the fair market value of all of its assets. MUFTA § 3(a). The transfer of the estate's remaining assets rendered the estate insolvent. The transfer is therefore fraudulent pursuant to MUFTA. Accordingly, the IRS may seek to recover the estate's tax liability from petitioner.

Respondent acknowledges that petitioner's personal liability is limited to the amount actually transferred to him. *See Schussel v. Werfel*, 758 F.3d at 92–93. The estate transferred to petitioner the Hingham Property, decedent's jewelry and personal effects, cash from decedent's personal bank account, decedent's life insurance policy, and the conversion of decedent's 1% interest in Spencer Press. Respondent did not present any evidence that the Parsonsfield Note was transferred to petitioner, and therefore the value of the note may not increase this limitation.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decisions will be entered under Rule 155.*